Elizabeth A. MARSH, Executrix of the Estate of William E. Marsh, Jr., and Elizabeth A. Marsh, d/b/a Marsh Enterprises, Plaintiffs-Appellants,

v.

AUSTIN–FORT WORTH COCA–COLA BOTTLING COMPANY, Defendant-Appellee.

No. 84–1372.
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1984.

John C. Stahl, San Antonio, Tex., for plaintiffs-appellants.

Felsman, Bradley & Gunter, Charles D. Gunter, Jr., Robert A. Felsman, Scurlock, Binion, Brackett & Oldham, A. William Brackett, Fort Worth, Tex., for defendant-appellee.

Before REAVLEY, POLITZ and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Plaintiffs appeal from an order granting a Motion for Summary Judgment. Because we are unable to determine from the record which issues were in the case when the district court entered judgment, a question that must be resolved before we can exercise appellate jurisdiction in this case, we set aside the order of the district court and remand the case for further proceedings.

## I.

At the National Soft Drink Association Convention in November 1980, William Marsh for the first time displayed a new bulk storage cart which he had designed and built. Charles Geren, an officer of the bottler Austin-Fort Worth Coca Cola Bottling Company, saw the cart at the convention and liked it. The bottler bought 86 carts from Marsh in February 1981 and 50 more in June 1981. At the end of June the bottler requested that Marsh submit a quotation for 300 additional carts. He submitted his bid in early July, but the order was ultimately filled by Stinson Manufacturing Company of San Antonio. The Stinson carts were allegedly constructed with the same gate assembly and springs as that designed by Marsh. Marsh died in September 1981, and since that time his wife, appellant Elizabeth Marsh, has carried on his business. She submitted on his behalf a patent application for the design of the cart on November 6, 1981 and Letters Patent were granted November 22, 1983.

Marsh sued in July 1983 alleging unfair trade practices, conspiracy to defraud, and fraud, all relating to the bottler's alleged appropriation of Marsh's design of the bulk storage cart. Jurisdiction was based on diversity of citizenship. When Letters Patent were granted for the cart design in November 1983, Marsh did not amend her complaint to allege patent infringement, and in her briefs to this court states that her suit is not a patent case.

In support of its Motion for Summary Judgment in January 1984 the bottler argued that since Marsh did not have patent protection on the cart,[1] her claims under state laws of unfair trade practices were preempted and that no facts had been pled which supported the claims of conspiracy to defraud and fraud. Marsh replied that a patent had been granted for Marsh's cart

---

1. Appellant complains on appeal that appellee committed a continuing fraud on the district court by attaching to its Motion for Summary Judgment appellant's initial response to appellee's Request for Admissions. In her initial response appellant had admitted that she had no issued U.S. patent covering the cart design. Appellant had amended that response, before the Motion for Summary Judgment was filed, to reflect the grant of Letters Patent. The merits, if any, of this contention, is a matter for the district court to decide on remand.

design and attached the Letters Patent as an Exhibit. She insisted, however, that she "[did] not predicate ... [her] cause of action on infringement of patent ... but [on] unfair trade practices, conspiring to defraud Plaintiffs of their property, and fraud."

Characterizing the complaint as alleging not only violations of state law but also "patent violations," the district court granted the Motion for Summary Judgment. Based on 35 U.S.C. § 102 and a recent decision by this Court, *Martin v. Norman Industries, Inc.*, 725 F.2d 990 (5th Cir. 1984), the district court ruled that William Marsh had "lost his patent rights" when he publicly displayed his cart at the November 1980 convention.[2] The court further ruled that appellant had not stated a claim under state law.

## II.

At the outset we are faced with a question regarding our jurisdiction. Although Marsh did not formally plead violations of patent law and has consistently asserted that this case is not a patent case,[3] the district court did decide a patent issue when it determined that William Marsh "lost his patent rights."[4] Under the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, codified at 28 U.S.C. § 1295(a)(1), the Court of Appeals for the Federal Circuit has exclusive jurisdiction "of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title...."[5] Accordingly, if the district court's jurisdiction in this case was based "in whole or in part, on section 1338," we lack jurisdiction in this appeal. Because the scope of this new jurisdictional statute is unsettled and presents important questions about appellate jurisdiction in cases with patent issues, we deem it inappropriate to answer those questions on the ambiguous record before us.

---

**2.** The district court read § 102 and the *Martin* case to mean that patent rights are lost by *any* public use before filing a patent application. While we do not pass on the merits of this ruling we note that the district court apparently overlooked the one year period the statute allows for the filing of a patent application after the first public use. Section 102 provides:

> A person shall be entitled to a patent unless ... (b) the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent....

In this case there may be an issue of fact whether the patent application was filed within the applicable time limit.

**3.** The complaint alleged that the gate assembly for the cart was the "sole and exclusive property" of Marsh Enterprises but the complaint did not invoke the protections of the patent laws. Marsh insisted in her Opposition to Motion for Summary Judgment that she did not predicate her claim on infringement of patent and in her brief to this Court again insists that she does not allege any patent violations.

**4.** Although we do not decide the question, we note that the district court may have been correct in construing the case as presenting an issue of patent law. As Professors Wright, Miller and Kane point out:

> The formal issues framed by the pleadings are not controlling on a motion for summary

judgment; the court must consider the issues presented by other material offered by the parties on the motion to determine whether the Rule 56 request should be granted.

10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2721, at 43 (1983). It has also been observed that

> courts have refrained from granting the [summary] judgment where the parties show in any manner, by affidavit or otherwise, that they have a meritorious case which they have mistakenly failed to plead.

*Id.* at n. 8, quoting Clark, *Code Pleading* § 88, at 56 (2d ed. 1947). Appellant asserted in her complaint a property interest in the cart design and pointed out the existence of her Letters Patent in her Opposition to Motion for Summary Judgment.

There is some basis, therefore, for construing the pleadings and summary judgment material as asserting the protections of the patent laws. But we cannot overlook the fact that both parties insist that this case does not present issues of patent law and that appellant has apparently never asserted that her rights under the patent laws have been infringed. As we explain in the text *infra*, given the uncertain contours of our appellate jurisdiction in this area, it would be unwise to attempt to define them based on such an ambiguous record.

**5.** 28 U.S.C. § 1338(a) gives the district courts jurisdiction over any civil action "arising under any Act of Congress relating to patents...."

 The Federal Courts Improvement Act was enacted in part to promote uniformity and efficient administration of the patent laws by centralizing patent appeals in the Court of Appeals for the Federal Circuit. *Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282 (9th Cir.1984); S.Rep. No. 275, 97th Cong. 1st Sess. 1, *reprinted in* 1982 U.S.Code Cong.Ad.News 11. Where the case involves only a patentee's claim that his patent has been infringed or when an alleged infringer sues for a declaration that a patent is invalid, the exclusive appellate jurisdiction of the Court of Appeals for the Federal Circuit can scarcely be questioned. It is not so apparent, however, that the Federal Circuit should also have exclusive jurisdiction in a case such as the one before us where patent claims may be mixed with claims based on other laws. The phrase "based, in whole or in part, on section 1338" could arguably support several types of jurisdiction as Judge Newman observed in a recent article:

> First, the [Court of Appeals for the Federal Circuit (CAFC)] could have what might be called traditional "arising under" jurisdiction. Under this approach an entire case would be appealed to the CAFC if a claim in the district court arose under the patent laws. That approach would clearly send the whole case to the CAFC when the plaintiff asserted a patent claim (either of infringement or patent invalidity), but might not have this effect if the patent claim was asserted only as a defense. Second, the CAFC could have what might be called "case" jurisdiction. Under this approach, the entire case would be appealable to the CAFC, so long as there was a patent issue in the case, whether or not that issue was raised solely as a defense. Third, the CAFC could have what might be called "issue" jurisdiction. Under this approach, only the patent issues would be appealable to the CAFC, leaving the remaining issues for appeal to the court of appeals for the pertinent geographic area.

Newman, "Tails and Dogs: Patent and Antitrust Appeals in the Court of Appeals for the Federal Circuit," 10 APLA Q.J. 237, 238–39 (1982). See also Note, "Appraising the CAFC," 57 S.Cal.L.Rev. 301, 326–33 (1984).

 The present case illustrates some of the problems presented by the uncertain scope of section 1295(a)(1). If a patent issue exists in this case, we must determine whether in deciding that issue the district court's jurisdiction was "based, in whole or in part, on section 1338" and, if it was, whether to transfer only the patent issue or both that issue and the state claims to the Court of Appeals for the Federal Circuit. Because the record is ambiguous on whether there are patent issues in this case and how such issues may have come in, we think it best not to attempt to decide here these important questions about the scope of section 1295. We agree with the observation of the Ninth Circuit that section 1295 "is a perplexing statute the meaning of which ... will become fixed only by means of case-by-case analysis. To observe judicial restraint and decide no more than we must is the appropriate course here." *Handgards v. Ethicon, supra.* Accordingly, we set aside the district court's order granting the Motion for Summary Judgment and remand the case so that the court can conduct a pretrial conference or other proceeding which will enable it to determine which issues are in this case and decide those issues in due course.

Vacated and remanded.