Charles R. CHRISTIANSON, and International Trade Services, Inc., a Massachusetts corporation, Plaintiffs-Appellees,

v.

COLT INDUSTRIES OPERATING CORPORATION, Defendant-Appellant.

No. 86–1145.

United States Court of Appeals, Seventh Circuit.

Argued May 8, 1986.

Decided Aug. 19, 1986.

Anthony M. Radice, Parker, Auspitz, Neesemann & Delehanty, P.C., New York City, for defendant-appellant.

John Camerson McNett, Woodard, Weikart, Emhardt & Naughton, Indianapolis, Ind., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The primary question we address in this appeal is whether this court has appellate jurisdiction over the dispute. For the reasons stated below, we will hold that the instant case "arises under" the patent laws of the United States and, therefore, that exclusive jurisdiction over the appeal from the district court's decision lies in the Court of Appeals for the Federal Circuit under 28 U.S.C. § 1295. We will order the case transferred pursuant to 28 U.S.C. § 1631.

I

In 1959, the defendant-appellant, Colt Industries Operating Corporation ("Colt") acquired a license from another company for sixteen patents and other rights relating to the seller's "AR–10" and "AR–15" rifles. Colt refined these designs and developed a weapon, known as the "M16," that was adopted by the United States Army in 1964 as its standard small-arms rifle. It remains the standard today. Colt granted the Army a manufacturing license to produce the weapon, and entered into contracts with various suppliers in the United States for the manufacture and sale of component parts of the rifle. The defendant also sells the M16 to non-military customers, such as law enforcement agencies, and to several foreign governments and has provided a number of foreign governments with manufacturing licenses; most of the latter agreements, however, have expired.

Colt produces several versions of the M16. In the course of refining the weapon, the company has obtained additional patents, some of which have been incorporated into the weapon. Many of these patents have expired. However, much of Colt's engineering work for the M16 was not for patents, but for the refinement of the specifications of the components of the rifle, because it was essential that all parts function effectively, be mass-producible, and remain interchangeable. Much of the work on the weapon has been devoted to the selection of materials and the development of tooling, testing, and manufacturing processes to control the tolerances of the rifle's parts.

Colt seeks to maintain the secrecy of these conventional (i.e., nonpatentable) techniques in a number of ways. It places proprietary legends on its drawings, which state that the information contained therein is owned by Colt and cannot be disclosed to third parties. In its contracts, Colt prohibits its suppliers and licensees from using the drawings outside the scope of their agreements and from disclosing the information to third parties. Colt also sends letters to its suppliers reminding them of their obligations. Its employees must agree not to disclose, even after they leave Colt, the confidential information they obtain while working for the defendant. The company has sent cease-and-desist letters and initiated legal proceedings against those parties it considered to be misappropriating its allegedly proprietary information.

Prior to the instant case, Colt filed in 1983 a suit in the United States District Court for the Central District of Illinois against Springfield Armory, Inc., and a related corporation, Rock Island Armory, Inc., (referred to collectively as "Springfield"), to enjoin the performance of a con-

tract Springfield had for the sale of M16–type rifles to El Salvador. Colt claimed that it would be irreparably damaged by Springfield's alleged infringement of Colt's patents and alleged unauthorized use of Colt's drawings and proprietary information, which Colt claimed were trade secrets and its exclusive property. Springfield sought to show that it had "reverse engineered" the weapon. After a hearing, the district court found that Springfield had simply copied Colt's proprietary documents and granted a preliminary injunction against Springfield.

After the injunction was issued, Colt added Charles Christianson (a former Colt employee) and Christianson's company, International Trade Services, Inc., (referred to collectively as "Christianson") as parties to the *Springfield* action on the ground that Christianson was the source of information for Springfield. Colt voluntarily dismissed its complaint against Christianson after the district court denied Colt's motion for a preliminary injunction against Christianson.

Springfield sought review of the preliminary injunction before the Federal Circuit. Springfield did not pursue the "reverse engineering" theory on appeal, but argued instead that, because the weapon could not be reverse engineered, Colt should have revealed the dimensions, tolerances, and specifications of the rifle in approximately 30 patent applications in order to satisfy the disclosure requirements of 35 U.S.C. § 112.[1] The Federal Circuit stated that Springfield's § 112 arguments, particularly those related to "best mode," "have an appearance of validity" (citing *White Consolidated Industries, Inc. v. Vega Servo-Control, Inc.,* 713 F.2d 788 (Fed.Cir.1983)), but found that "the evidence of record is almost totally lacking in specifics." The court noted further:

[A]s we understand it, the numerous Colt patents covered *parts* of the M–16, so that, at most, a best mode of each would be for *use* in the M–16 rifle—not for the M–16 itself. This would require an analysis, patent by patent, of the specifications (trade secrets) alleged to be essential in practicing each invention and/or meeting the best mode requirement; also a showing of why each individual invention could not be practiced and/or the best mode requirement satisfied in the absence of such specifications; further, whether such specifications were in existence at the time the Colt patent applications were filed.

Thus, the Federal Circuit found that these facts would have to be developed further and in a brief unpublished order affirmed the preliminary injunction granted in favor of Colt. *Colt Industries Operating Corp. v. Springfield Armory, Inc.,* 732 F.2d 168 (Fed.Cir.1984).

In the meantime, Christianson filed the instant action against Colt. Its complaint was not artfully drafted. Even a cursory examination of the pleading suggests that little attention was given to some rather important details. For example, in the prayer for relief under the antitrust claim the plaintiff asks for "trouble damages." In addition, given the complexity of the factual and legal questions presented, the complaint is astoundingly brief. Nonetheless, the following allegations emerge: Colt controls nearly all of the domestic and foreign manufacture, marketing, and sale of 5.56mm automatic assault and semi-automatic rifles that fall within the M16 designation and also controls the domestic and foreign market for the manufacture, marketing, and sale of M16 parts and accessories. Colt had licensed the United States government and others with respect to the patents held by Colt for the M16, but the

---

1. 35 U.S.C. § 112 provides in relevant part:
   The specification [required by 35 U.S.C. § 111] shall contain a written description of the invention, and the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

licenses extended beyond the patents. In addition, the complaint alleged:

As of 1980, the basic patents with respect to the Colt rifle within the M–16 designation and many of the Colt improvement patents on such rifle within the M–16 designation had expired.

The validity of the Colt patents had been assumed throughout the life of the Colt patents through 1980. Unless such patents were invalid through the wrongful retention of proprietary information in contravention of United States Patent Law (35 U.S.C. § 112), in 1980, when such patents expired, anyone "who has ordinary skill in the rifle-making art" is able to use the technology of such expired patents for which Colt earlier had a monopoly position for 17 years.

[Christianson] and anyone else has the right to manufacture, contract for the manufacture, supply, market and sell the M–16 and M–16 parts and accessories thereof at the present time.

Complaint ¶¶ 17–19.

In 1976, prior to the expiration of the Colt patents, Christianson expended funds for tooling to be used in the manufacture of M16 parts and accessories, and Colt initially gave Christianson permission to produce these products. Until shortly before May of 1984, Christianson was engaged in the manufacture of M16 parts and accessories. However, according to the complaint:

Contrary to the permission extended to [Christianson] to sell Colt parts and accessories and in violation of the anti-trust laws of the United States ..., Colt has embarked upon a course of conduct to illegally extend its monopoly position with respect to the described patents and to prevent [Christianson] from engaging in any business with respect to parts and accessories of the M16....

Complaint ¶ 22.

The complaint describes various actions taken by Colt, such as the sending of letters to actual and potential customers of Christianson to discourage them from dealing with Christianson and the filing of lawsuits to enforce its monopoly. In addition, it alleged that Colt:

[s]ent additional correspondence to customers and potential customers of [Christianson] asserting illegally its claimed rights over M–16 drawings, specifications and parts and accessories to the M–16, and falsely stating that "Colt's right" to proprietary data had been "consistently upheld in various courts."

Complaint ¶ 22(c).

As a result of these activities, Christianson was driven out of business. Alleging that its demise caused a generalized injury "in the domestic and foreign marketplaces and assured Colt of the maintenance of its unlawful monopoly of the manufacture, marketing and sale of" M16s and their parts and accessories, Christianson sought recovery under §§ 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26 (by reason of Colt's violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2), in the form of damages, injunctive relief, attorney's fees, and any other relief the court may deem proper.[2]

In its answer, Colt denied generally Christianson's allegations and set up seven affirmative defenses. With reference to the patent disclosures, however, Colt admitted that "anyone with ordinary skill in the art is entitled to and is able to use any and all of Colt's expired patents for any legitimate purpose." Answer ¶ 18. Colt also included in its answer eleven counterclaims for breach of contract, unfair competition, misappropriation of trade secrets and trademarks, and tortious interference with contractual relations.

The case was scheduled for trial in late 1984. However, that schedule was cancelled on the representation of the parties that they would file cross-motions for summary judgment. The district court ruled on these motions on May 24, 1985. 609 F.Supp. 1174. The court stated in its order that "[t]he complaint alleges that Colt has

---

**2.** Christianson later amended the complaint to add a second count alleging that Colt tortiously interfered with Christianson's contracts and prospective economic advantages.

employed [restrictive clauses in its con- tracts] in an attempt to deny to any others the right to manufacture such rifles and parts notwithstanding the fact that Colt's patents have been expired for several years. It is alleged that Colt attempts, by such practices, to foster and maintain its monopoly position in the manufacture and merchandising of the products as if its patents still remained in force." It ob- served that "[t]he thrust of plaintiff's [summary-judgment] motion is the position that Colt cannot assert its claims of trade secrecy against plaintiffs because it had, in its now-expired patents, failed to make the full disclosures of its claims of invention as required by 35 U.S.C. § 112."

The court concluded that the disclosures made by Colt in obtaining its patents satis- fied neither the "enablement" nor the "best mode" requirements of 35 U.S.C. § 112, so that the patents were invalid *ab initio* and that any claim of trade secrecy based on the undisclosed information was also inval- id. Thus, it granted Christianson's motion for summary judgment as to liability and denied Colt's motion. On July 19, 1985, 613 F.Supp. 330, the district court entered its "Final Judgment on Liability," in which (1) it was ordered that a trial be held to determine the damages Christianson sus- tained as a result of Colt's anticompetitive activities, (2) nine of Colt's patents were invalidated "from their inception," and (3) all trade secrets regarding the M16, wheth- er connected with the patents or not, were declared void and unenforceable. Colt was enjoined from asserting or seeking to en- force its now invalid trade secrets, ordered to preserve the technical information it had about the M16, and directed to remove its proprietary legends and confidentiality des- ignations from its documents.

Colt originally filed this appeal under 28 U.S.C. §§ 1292(a)(1) and 1295 in the Federal Circuit. Christianson, however, moved for a transfer under 28 U.S.C. § 1631 on the

ground that the claims of the complaint did not "arise under" the patent laws. The Federal Circuit, in an unpublished order dated December 4, 1985, granted Christian- son's motion. The appeal was then trans- ferred and argued before this court.

## II

■ This court, like all federal courts, has a continuing obligation to determine whether it has subject-matter jurisdiction over the disputes coming before it. *See Bender v. Williamsport Area School Dis- trict,* — U.S. —, —, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Allen v. Fer- guson,* 791 F.2d 611, 615 (7th Cir.1986); *Professional Managers' Association v. United States,* 761 F.2d 740, 745 n. 3 (Fed. Cir.1985). Since the inception of the feder- al judiciary, it has been the settled rule that a court must make a determination of jurisdiction *sua sponte* when it first re- ceives a case, and at any time thereafter in the course of the litigation should jurisdic- tion appear questionable.[3] *Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Mansfield, Coldwater & L.M. Railroad v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); *Capron v. Van Noorden,* 6 U.S. (2 Cranch) 126, 2 L.Ed. 229 (1804); *see also Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir.1986); *Dubost v. United States Patent & Trademark Office,* 777 F.2d 1561, 1564– 65 (Fed.Cir.1985); *Van Drasek v. Lehman,* 762 F.2d 1065 (D.C.Cir.1985); *Professional Managers' Association,* 761 F.2d at 743. The uncritical recitation of a jurisdictional basis, whether made by either a lower court or a party, is not controlling, no more than is the parties' stipulation of jurisdic- tion in a federal tribunal. *See Mansfield,* 111 U.S. at 382, 4 S.Ct. at 511. The power of the federal judiciary is limited and no court may alter the scope of its, or another

---

**3.** We are, of course, invested with an inherent "proto-jurisdiction" to determine whether we have subject-matter jurisdiction. *See Bender v. Williamsport Area School District,* — U.S. —, —, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501

(1986); *Franchise Tax Board v. Construction La- borers Vacation Trust,* 463 U.S. 1, 7, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983); *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 877 (Fed.Cir. 1983).

tribunal's, constitutional or statutory mandate. *See Williams v. Secretary,* 787 F.2d 552, 557 (Fed.Cir.1986). It follows, then, that the substance of the allegations (*i.e.,* their intended effect on the rights of the parties), not their form, is determinative and that we must look to the actual, rather than the ostensible, nature of the action that was before the district court in determining whether we have jurisdiction over an appeal. *Id.*[4]

We will first consider, however, a question presented by the unusual procedural posture of this case. No one would dispute that we are bound by a superior court's ruling on the issue of jurisdiction and that we are not bound by a lower court's ruling on the matter. This appeal, however, was originally filed in the Federal Circuit, a coordinate jurisdiction, that, in ruling on the appellee's motion to transfer, sent the suit here. The question then arises whether we are bound by that court's ruling that this court is to hear the case. We conclude that we are not.[5]

This is not an example of preclusion by final judgment, because, as the Supreme Court's decision in *Hoffman v. Blaski,* 363 U.S. 335, 340–41, 80 S.Ct. 1084, 1088, 4 L.Ed.2d 1254 (1960), illustrates, transfer orders are interlocutory. Thus, if any preclusive doctrine applies to the transfer order of the Federal Circuit under consideration, it is the doctrine of law of the case, which governs the regulation of matters *before* a final judgment. That doctrine, however, is prudential only and, in the words of Justice Holmes, "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). It does not mandate perpetuation of error and may even under certain circumstances be inappropriate to preclude reconsideration of those issues that, because of their intrinsic importance, must be left open for *sua sponte* reexamination in other procedural settings. Indeed, there is authority for the proposition that the issue of subject-matter jurisdiction is not constrained by law of the case principles. *See Potomac Passengers Association v. C & O Railway,* 520 F.2d 91, 95 & n. 22 (D.C.Cir.1975). Even the Fifth Circuit, which has developed a rigorous law of the case doctrine, routinely allows for the reconsideration of jurisdictional rulings. *See, e.g., Harcon Barge Co. v. D & G Boat Rentals, Inc.,* 746 F.2d 278, 283 n. 2 (5th Cir.1984), *rehearing on other grounds,* 784 F.2d 665 (5th Cir.1986); *EEOC v. Neches Butane Products Co.,* 704 F.2d 144, 146–47 (5th Cir.1983); *Western Electric Co. v. Milgo Electronic Corp.,* 568 F.2d 1203, 1205–06 & nn. 5, 6 (5th Cir.), *cert. denied,* 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978); *see also In re "Agent Orange" Product Liability Litigation,* 745 F.2d 161, 163 n. 1 (2d Cir.1984); *Acton Corp. v. Borden, Inc.,* 670 F.2d 377, 379 n. 2 (1st Cir.1982); *United States v. Humphries,* 636 F.2d 1172, 1174 n. 2 (9th Cir.1980), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981); *Green v. Department of Commerce,* 618 F.2d 836, 839 n. 9 (D.C. Cir.1980).

■ Of course, we need not under the facts of this case decide whether law of the case is *always* inapplicable to interlocutory jurisdictional rulings. We do find, however, that it should not foreclose reconsideration of the decision of the Federal Circuit ordering a transfer of the instant appeal to this court. The doctrine allows for reconsideration and reversal of even nonjurisdictional rulings that are manifestly incorrect, and we believe that the jurisdictional ruling at issue in this case was clear-

---

4. In an appeal of this nature, we would ordinarily ask for further briefing on the jurisdictional question. We, however, perceive no need for such a request in this case, because we have before us the briefs filed by the parties in the Federal Circuit regarding the plaintiff's motion to transfer under 28 U.S.C. § 1631.

5. We are only addressing the question of subject-matter jurisdiction and express no view on the binding effect of rulings by a coequal jurisdiction on other matters that do not affect the power of the court to rule on the subject matter of the case.

ly wrong. In addition, this is not a case in which the jurisdictional determination turns on disputed facts. To the contrary, the basis for the lawsuit appears on the face of the complaint. Nor has there been a prior plenary appellate decision on the merits. Indeed, if this jurisdictional ruling had been made by a motions panel of this court, we would not hesitate to reconsider it. Furthermore, we should, in view of the policy embodied in § 1295 to centralize patent appeals, be especially sensitive to the allocation of jurisdiction between the regional circuits and the Federal Circuit.

The fact that this ruling was made by a sister circuit cannot alter that result. We do not think that an interlocutory jurisdictional ruling made by a coordinate tribunal is entitled to any greater deference than one of our own interlocutory jurisdictional rulings. It is true that a transfer should not give rise to a second opinion on every issue decided by the transferor court, but it is also true that transfer orders are not of a special breed and that a transfer should no more ossify prior rulings of a coordinate jurisdiction than it should require their routine reexamination. Predictability in litigation and comity among judicial colleagues are important, but they cannot allow one circuit either to enlarge or restrict improperly the jurisdiction of another. An action transferred from one circuit to another under 28 U.S.C. § 1631 is still a single case and should be treated as nearly as possible like a case that remains in a single jurisdiction. Thus, under the authority of *Hoffman*, 363 U.S. at 340–41, 80 S.Ct. at 1088, we find that interlocutory jurisdictional rulings that result in a transfer should, to the extent practicable, have the same effect and significance that such rulings would have in litigation that is not transferred.[6] As we would have reexamined our own ruling, so may we reexamine that of the Federal Circuit.

We also note that the Federal Circuit has never considered itself constrained by the jurisdictional rulings of other circuits that result in a transfer to that court, and has even allowed the party that was successful in obtaining a transfer to the Federal Circuit to change its position and move for a return to the transferor forum. *See, e.g., Bray v. United States*, 785 F.2d 989 (Fed. Cir.1986); *Hurick v. Lehman*, 782 F.2d 984 (Fed.Cir.1986); *Chemical Engineering Corp. v. Marlo, Inc.*, 754 F.2d 331 (Fed.Cir. 1984); *cf. C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874 (Fed.Cir.1983). We perceive no reason why this power to reconsider the jurisdictional rulings of another circuit court should not be reciprocal. There is certainly no basis in law for the proposition that the Federal Circuit has greater latitude than the regional circuits in defining the boundary between its and the regional circuits' jurisdiction.[7]

We will, therefore, consider whether we possess appellate jurisdiction in the instant case. To do so, we must determine whether the Federal Circuit has exclusive juris-

---

6. We note the Court's statement in *Hoffman*, 363 U.S. at 240 n. 9, 80 S.Ct. at 1088 n. 9, that the mandamus order at issue (which preceded the transfer) did not expressly reach the jurisdiction question. Thus, *Hoffman* does not directly address the effect of a transfer order that expressly rules on the jurisdictional issue. The Court's characterization of the mandamus order as interlocutory, however, is a powerful, albeit implicit, recognition that the preclusive effect of that order is to be determined by the doctrine of law of the case and not those of res judicata or collateral estoppel. *Cf. id.*, 363 U.S. at 345, 80 S.Ct. at 1090 (Stewart, J., concurring).

7. There is also a prudential consideration involved here. The relevant portion of the transfer order in this case reads, in its entirety, as follows:

Having reviewed the submissions of the parties, as well as the pleadings filed in the district court, the court can discern no basis for jurisdiction in the Court of Appeals for the Federal Circuit.

We believe that this order—like a summary affirmance, *see, e.g., Bowers v. Hardwick*, — U.S. —, — n. 4, 106 S.Ct. 2841, 2843 n. 4, 92 L.Ed.2d 140 (1986); *Illinois State Board v. Socialist Workers Party*, 440 U.S. 173, 180–81, 99 S.Ct. 983, 988, 59 L.Ed.2d 230 (1979), or a decision of a motions panel, *see, e.g., EEOC v. Neches Butane Prods. Co.*, 704 F.2d 144, 147 (5th Cir.1983)—has considerably less persuasive force than a full opinion on the complex questions presented.

diction over the appeal because, in the absence of 28 U.S.C. § 1295(a)(1), we clearly would. Section 1295(a)(1) sets forth the Federal Circuit's jurisdiction over patent, plant-variety, copyright, and trademark disputes and provides in relevant part:

> [The Federal Circuit] shall have exclusive jurisdiction ... of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, *in whole or in part*, on [28 U.S.C. § 1338]....

(emphasis added.) [8]

The primary purposes for the creation of the Federal Circuit were to provide greater uniformity in the substantive law of patents and to prevent the inevitable forum shopping that results from conflicting patent decisions in the regional circuits. *Atari, Inc. v. JS & A Group, Inc.,* 747 F.2d 1422 (Fed.Cir.1984) (en banc); *C.R. Bard,* 716 F.2d at 878. It is these concerns that animate the jurisdictional grant under § 1295 and inform our analysis of the jurisdiction question.

██ By granting the Federal Circuit exclusive jurisdiction over every case in which the district court's original jurisdiction was based "in part" on § 1338, § 1295 accords priority to patent issues. It is clear that the goal of uniformity would be difficult to achieve if a case must be solely or primarily based on the patent laws before § 1295 would be triggered. Thus, if any part of the district court's jurisdiction could have been based on § 1338, the Federal Circuit has exclusive jurisdiction over the entire appeal. Non-patent issues in the suit, even if they have their genesis in federal law, are for the purposes of establishing appellate jurisdiction considered pendent to the patent claims.[9] *See Interpart Corp. v. Italia,* 777 F.2d 678, 681 (Fed.Cir.1985); *Sun Studs, Inc. v. Applied Theory Associates, Inc.,* 772 F.2d 1557 (Fed.Cir.1985); *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1029 (Fed.Cir.1985); *Rhone-Poulenc Specialistes Chimiques v. SCM Corp.,* 769 F.2d 1569 (Fed.Cir.1985); *Professional Managers' Association,* 761 F.2d at 743–44; *Atari, Inc.,* 747 F.2d at 1429–38; *Panduit Corp. v. All States Plastic Manufacturing Co.,* 744 F.2d 1564, 1573 (Fed.Cir.1984). This is true even though the non-patent claims might be resolved first and could, therefore, moot the patent claims. *Air Products & Chemicals, Inc. v. Reichhold Chemicals, Inc.,* 755 F.2d 1559, 1563–64 (Fed.Cir.), *cert. dismissed,* — U.S. —, 106 S.Ct. 22, 87 L.Ed.2d 700 (1985).[10]

28 U.S.C. § 1338(a), to which § 1295(a)(1) refers, provides:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to pat-

---

**8.** It should be noted that § 1295(a)(1) excepts from the Federal Circuit's jurisdiction those cases that involve claims concerning copyright or trademarks and no other claims. *See Interpart Corp. v. Italia,* 777 F.2d 678, 680 (Fed.Cir. 1985). Thus, the latter category of actions are still heard by the regional appellate courts.

**9.** The rules governing federal statutory jurisdiction were developed primarily to determine whether a case could be heard before a federal, as opposed to a state, court. In the context of § 1295, however, a different set of considerations comes into play because a judgment has already been rendered by a federal district court. Obviously, every case that "arises under" 28 U.S.C. § 1338 also "arises under" 28 U.S.C. § 1331, because the patent laws are a subset of the laws of the United States. However, for § 1295 to have any practical effect in centralizing patent appeals, that provision must mean that appellate jurisdiction depends on whether the jurisdiction of the district court *could* have been based on § 1338. Thus, the presence of other grounds for original federal jurisdiction cannot foreclose an appeal before the Federal Circuit; otherwise, there could be no such appeals, because, as noted above, all § 1338 cases are also § 1331 cases.

**10.** Section 1295 may save costs by promoting uniformity, but, initially at least, it imposes new costs generated by jurisdictional uncertainty. *Cf. Van Drasek v. Lehman,* 762 F.2d 1065, 1070 (D.C.Cir.1985); *Atari, Inc. v. JS & A Group, Inc.,* 747 F.2d 1422 (Fed.Cir.1984) (en banc); *Professional Managers' Association v. United States,* 761 F.2d 740 (Fed.Cir.1985). The instant appeal is but another in the burgeoning list of cases delineating, at considerable expense to the parties and the judicial system and no doubt considerable bewilderment to laymen, the boundaries of 28 U.S.C. § 1295(a)(1).

ents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

Although there was initially some confusion regarding the interaction between § 1295 and § 1338, *see, e.g., Marsh v. Austin-Fort Worth Coca-Cola Bottling Co.,* 744 F.2d 1077, 1080 (5th Cir.1984), it is now settled that § 1295 incorporates the traditional rules of statutory "arising under" jurisdiction. *See Gilson v. Republic of Ireland,* 787 F.2d 655 (D.C.Cir.1986); *Dubost,* 777 F.2d at 1561; *Atari, Inc.,* 747 F.2d at 1435–36; *see generally Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (discussion of "arising under" jurisdiction).

The term "arising under" appears in Article III of the Constitution. Chief Justice Marshall, writing for the Court in *Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 822–27, 6 L.Ed. 204 (1824), concluded that this constitutional provision extended the grant of power to the federal judiciary to every case in which federal law potentially forms an ingredient of the claim. It is clear, however, that these same words, when used in a *statutory* grant of jurisdiction, *e.g.,* § 1338, have a narrower meaning and do not reach every case in which there may be a federal component. *Franchise Tax Board,* 463 U.S. at 8 n. 8, 103 S.Ct. at 2846 n. 8. Nonetheless, as Justice Frankfurter observed in *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 470, 77 S.Ct. 923, 928, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting), "The litigation-provoking problem has been the degree to which federal law must be in the forefront of the case and not collateral, peripheral or remote."

There are two types of cases that may be said to "arise under" the patent laws for the purposes of § 1338 that are relevant to the disposition of this appeal.[11] First, as Justice Holmes stated in *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916), "A suit arises under the law that creates the cause of action." In *American Wells,* where the claim was injury to a business involving slander of patent, the Court found that "[w]hether it is a wrong or not depends upon the law of the state where the act.is done," so that the suit did not arise under the patent laws. Nonetheless, although Holmes's "creation" test may be helpful in identifying many cases that come within the district court's original jurisdiction, it has limited value in identifying those that do not. *See Franchise Tax Board,* 463 U.S. at 8–9, 103 S.Ct. at 2846.

Second, a case arises under the patent laws where the vindication of a right under a non-patent law calls for a determination of the meaning or application of a patent law. *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir.1964) (Friendly, J.), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); *see also Franchise Tax Board,* 463 U.S. at 9, 103 S.Ct. at 2846. In the words of the Federal Circuit, the case arises under § 1338.if the plaintiff seeks to vindicate a right or interest "that would be defeated by one or sustained by an opposite construction" of the patent laws. *Beghin-Say International, Inc. v. Ole-Bendt Rasmussen,* 733 F.2d 1568, 1570 (Fed.Cir. 1984); *see also Dubost,* 777 F.2d at 1565.

Of course, the determination whether a case fits within either of these two categories must be made in light of the "well-pleaded complaint" doctrine, which requires that the plaintiff's complaint establish that the case "arises under" federal law. As the Supreme Court observed in *Franchise Tax Board,* 463 U.S. at 10, 103 S.Ct. at 2846 (quoting *Taylor v. Anderson,*

11. Judge Friendly stated that there was a third category, *i.e.,* a case in which a distinctive policy of the patent laws requires that federal principles control the disposition of the claim. *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 828 (1964),

*cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). However, we need not consider this class of cases to resolve the jurisdictional question before us.

234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed.2d 1218 (1914)):

> [W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute ..., must be determined from what necessarily appears in the plaintiff's statement of his own claim in [the complaint], unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

See also *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The doctrine serves an important purpose in the scheme of federal jurisdiction, because it limits the scope of the district court's original jurisdiction. It is not clear when a court exercises original jurisdiction what issues will actually arise in the litigation. A federal question could appear in the course of virtually every lawsuit. Thus, to base original federal jurisdiction on merely potential federal questions would render illusory the Article III limitation that confines the power of the federal judiciary to specifically enumerated classes of cases. Accordingly, the exercise of federal jurisdiction is thought to be more appropriate where issues of federal law are likely to dominate. The well-pleaded complaint doctrine is based on the assumption that if the *plaintiff* relies on federal law in stating his claim, federal questions are more likely to dominate the litigation; thus, the doctrine helps preserve the balance of authority between state and federal courts. *See generally* Note, *Federal Preemption, Removal Jurisdiction, and the Well-Pleaded Complaint Rule*, 51 U.Chi.L.Rev. 634, 636–646 (1984).

We, however, are to consider the "well-pleaded" allegations *necessary* to the substance of the plaintiff's claim. These "necessary" allegations may or may not appear in the actual complaint. *See Franchise Tax Board*, 463 U.S. at 22–23, 103 S.Ct. at 2853; *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Thus, we are not bound by the omissions of the parties or the district court, and may recharacterize the claims appearing in that pleading. In addition to the language of the complaint, we may also consider arguments made outside the pleadings to determine the substance of the action.[12] *See Williams v. Secretary*, 787 F.2d 552 (Fed.Cir.1986); *Interpart Corp.*, 777 F.2d at 680–81; *Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 273 (Fed.Cir.1985); *Wronke v. Marsh*, 767 F.2d 354 (7th Cir.1985); *Van Drasek v. Lehman*, 762 F.2d 1065 (D.C.Cir.1985); *Maier v. Orr*, 754 F.2d 973, 980–82 (Fed.Cir.1985); *Chemical Engineering Corp. v. Marlo, Inc.*, 754 F.2d 331, 333–34 (Fed.Cir.1984). We may look to the position the plaintiff adopted in, for example, his motion for summary judgment. To otherwise limit the scope of our inquiry would encourage forum shopping, because a plaintiff could refer obliquely in his complaint to the patent claim he actually seeks to prosecute and then press it vigorously (and perhaps successfully) in a subsequent dispositive motion or at trial, yet isolate himself from review by the Federal Circuit. *Cf. Franchise Tax Board*, 463 U.S. at 22, 103 S.Ct. at 2853; *Marsh v.*

---

**12.** At an earlier time, it was the rule that jurisdiction "must be disclosed upon the face of the complaint, unaided by the answer" or any other paper filed in the proceeding. *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936). Thus, it was often said that the plaintiff, as the master of his complaint, could determine which court had jurisdiction over the action. *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). However, under the current state of the law, the rule that the actual language of the complaint is dispositive no longer applies. For example, as the Supreme Court noted in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2840, 2853, 77 L.Ed.2d 420 (1983), "[I]t is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat [federal jurisdiction] by omitting to plead the necessary federal questions in a complaint." *See also Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). It is still true, however, that the necessary factual allegations are to appear in the complaint and "may not be gleaned from the briefs and arguments themselves." *Bender v. Williamsport Area School District*, — U.S. —, —, 106 S.Ct. 1326, 1334, 89 L.Ed.2d 501 (1986).

*Austin-Fort Worth Coca-Cola Bottling Co.,* 744 F.2d 1077, 1079 n. 4 (5th Cir.1984).

■ It remains to apply these principles to the instant case. The complaint states that Christianson seeks recovery for violations of the federal antitrust laws, but, as the discussion above demonstrates, that recitation is not controlling. The pleading contains no reference to any jurisdictional statute, although the allegations indicate that there would be original subject-matter jurisdiction under at least 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity). *See Caldwell v. Miller,* 790 F.2d 589, 595 (7th Cir.1986) (complaint need not set forth statutory basis for subject-matter jurisdiction; allegations of jurisdictional facts alone are sufficient). The district court's order, which states only that there was original subject-matter jurisdiction under "28 U.S.C. § 1332 and 15 U.S.C. §§ 4, 15 and 26," provides little guidance. Christianson did not request in the complaint specific relief under the patent laws.[13]

Under Holmes's "creation" test, the complaint filed in this action does not "arise under" the patent laws of the United States. In view of the inadequacy of the "creation" test as an exclusionary principle, however, this observation does not conclude the inquiry. As noted earlier, there are other tests to consider, and we find that the instant dispute falls within the second category of "arising under" cases described above, because Christianson's right to recovery, although ostensibly based on the antitrust laws, "would be defeated by one or sustained by an opposite construction" of the patent laws. *Beghin-Say International, Inc. v. Ole-Bendt Rasmussen,* 733 F.2d 1568, 1570 (Fed.Cir. 1984); *see also Dubost,* 777 F.2d at 1564–65; *Ostow & Jacobs, Inc. v. Morgan-Jones, Inc.,* 189 F.Supp. 697 (S.D.N.Y.1960). Stated in another manner, the plaintiff must establish that his interpretation of the patent laws is correct in order to prevail, as the following discussion will demonstrate.

Christianson alleges that Colt held a monopoly in the relevant weapon market as a result of its patent rights. However, if Colt had complied with the disclosure requirements of 35 U.S.C. § 112, "anyone 'who has ordinary skill in the rifle-making art' [would be] able to use the technology of such expired patents for which Colt earlier had a monopoly for 17 years." Complaint ¶ 18. Christianson maintained by implication in the complaint, and expressly in its summary-judgment papers, that the information needed to make the parts was not available, so that Colt must necessarily have withheld that information in violation of § 112. The crux of the plaintiff's case is that, by failing to make the necessary disclosures under § 112, Colt is extending its exclusionary rights beyond the 17–year life of the M16 patents, a result inconsistent with the objectives of the patent system. Christianson's allegations (especially those concerning the antitrust violations) are completely inconsistent with the position that Colt *complied* with § 112 and that it is now attempting to maintain as trade secrets information already in the public domain due to the disclosures in the relevant patent applications. We agree, therefore, with the district court's statement that the plaintiff's position was that Colt, due to its failure to make full disclosures of its claims of invention, could not assert its claims of trade secrecy against Christianson.

The silence of the complaint on certain issues is as telling as its declarations. For example, the abuse by the defendant of the patent and trade-secrets law was the only basis Christianson asserted in the complaint for the alleged antitrust violation, and the only ground asserted for invalidity of the trade secrets was the withholding of information in contravention of § 112.

---

13. Christianson does include a prayer for attorney's fees, but this request is ambiguous, because both the patent and antitrust laws provide for such awards, *see* 15 U.S.C. § 15, 26; 35 U.S.C. § 285. In addition, the wording of the request for fees suggests that it refers to the antitrust provision. In any event, Christianson does not seek an express remedy under the patent laws; with no recovery specifically requested under the substantive provisions of Title 35, it is unlikely that the plaintiff would ask to obtain attorney's fees under the patent laws.

Thus, if Christianson's interpretation of that provision is incorrect, then Colt (1) has not improperly extended its patent monopoly by way of trade-secret law and (2) has simply engaged in a vigorous campaign to protect its allegedly proprietary information. Thus, after considering the substance of the complaint, we find that Christianson was necessarily seeking to vindicate a right or interest that would be defeated by one or sustained by the opposite construction of the patent laws. This case, then, "arose under" those laws, so that the district court's original jurisdiction was based in part on § 1338. The Federal Circuit, therefore, has exclusive jurisdiction over this appeal under § 1295.

Christianson's position that he only mentioned § 112 in his complaint in anticipation of a defense Colt would raise is disingenuous, to say the least. That the defendant might advance a different construction of a federal statute does not mean that the plaintiff's reference to the provision in the complaint was necessarily made to foreclose a defense. *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) ("[W]hen the plaintiff bases his cause of action upon an Act of Congress, jurisdiction cannot be defeated by a plea denying the merits of the claim."). The complaint may be sketchy, but it leaves no doubt that Christianson was relying on that pleading (Count 1 of which was never amended) to obtain a determination that Colt's patent applications failed to comply with the disclosure requirements of § 112. The summary-judgment proceedings also confirm our initial interpretation of the complaint. Because his only theory for the invalidation of the trade secrets was Colt's failure to comply with § 112, Christianson's argument that he expected Colt to assert that its patents were valid cannot mean that he was anticipating a defense.[14] We instead find that Christianson's argument that pat-

ent validity was a "defense" only serves to confirm that he was relying on Colt's alleged noncompliance with § 112 as the basis for his own cause of action.

### III

For the reasons stated above, we find that this court does not have jurisdiction over this appeal and order that the case be transferred to the Federal Circuit pursuant to 28 U.S.C. § 1631.

---

**14.** If Christianson is saying that Colt fully complied with § 112, but, nonetheless, attempted to make a trade secret out of that which was in the public domain, then there is no reason for Colt to present the "defense" of patent validity, be-

cause both sides would then simply be in agreement about the status of the patents. In other words, the defendant's allegation of patent validity cannot be a defense to the plaintiff's allegation of patent validity.