Benjamin PERLMAN,
Plaintiff-Appellant,

v.

CITY OF CHICAGO, a municipal corpo-
ration, William Devoney and Robert
Trusz, Defendants-Appellees.

No. 85–2089.

United States Court of Appeals,
Seventh Circuit.

Argued May 12, 1986.

Decided Sept. 10, 1986.

Rehearing and Rehearing En Banc
Denied Oct. 6, 1986.

Kenneth N. Flaxman, Chicago, Ill., for
plaintiff-appellant.

Sharon Baldwin, Corp. Counsel, Chicago,
Ill., for defendants-appellees.

Before BAUER and WOOD, Circuit Judges, and CAMPBELL, District Judge.*

BAUER, Circuit Judge.

The plaintiff, Benjamin Perlman, sued the City of Chicago and two Chicago police officers under 42 U.S.C. § 1983 for an allegedly illegal seizure of jewelry from plaintiff's jewelry store. The district court granted summary judgment in favor of one of the police officers and a jury returned a verdict in favor of the City of Chicago and the other police officer. Perlman alleges a number of errors on appeal; nevertheless we affirm the rulings of the trial court and the jury's verdict.

I.

On March 25, 1982, Chicago police arrested two suspected burglars, Mary Buckman and Mark Bertucci. Buckman confessed to committing some 100 burglaries, and Bertucci admitted selling articles stolen by Buckman. Bertucci identified Imperial Jewelers, a jewelry store owned and operated by Benjamin Perlman, as an establishment to which he had sold stolen jewelry. On the basis of information provided by Bertucci and Buckman, Officer Robert Trusz of the Chicago Police Department prepared an affidavit to obtain a warrant to search Imperial Jewelers. The warrant was issued authorizing the seizure of a camera and seven items of jewelry.

On March 27, 1982, Officer Trusz and three other police officers, led by Sergeant William Devoney, executed the search warrant. The officers were accompanied by Bertucci and two burglary victims whose jewelry was among the items listed in the warrant. Upon entering the store and serving the manager with the warrant, Sergeant Devoney noticed that no second-hand jewelry dealer's license was displayed. At this time, one of the burglary victims identified several items of jewelry listed in the warrant in a showcase in the front of the store. Sergeant Devoney then asked Perlman if he had any used jewelry in the store. Perlman replied that he kept used jewelry in a safe in the rear of the store and then had one of his employees bring several trays containing the jewelry to the front of the store. While carrying one of the trays, the employee attempted to "palm" one of the rings but was spotted by Sergeant Devoney and ordered to return the ring. One of the burglary victims accompanying the officers later identified the ring as stolen. Six or seven trays were eventually taken from the safe to the front of the store. The burglary victims and Bertucci identified a number of pieces of jewelry as stolen, some of which were listed in the warrant and some of which were not.

As the search wore on, Perlman became increasingly concerned about the disruption to his business the search was causing. Perlman had advertised a sale for that day and the police did not permit anyone to enter or leave the store while the search was being conducted. Not all of the items listed in the warrant had been found, however, and the trays containing the used jewelry contained nearly one thousand items. In order to resume business, Perlman agreed to allow the officers to take the used jewelry to a police station so that they could inventory each item and attempt to ascertain which items were stolen. Perlman then placed the trays into cases and accompanied the officers to the station, where he sorted and arranged the jewelry. A police technician then photographed the jewelry in Perlman's presence. Perlman and his manager were charged with receiving stolen goods.

The police contacted persons who had filed burglary reports, informed them of the seizure, and displayed the jewelry to them on March 29 and 30, 1982. It appears that some thirty items were identified as stolen by persons who could verify ownership of the items, although the exact number is not clear from the record. A short

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, sitting by designation.

time later the police held a well-publicized property show-up that was attended by the general public. Again, the record is muddled as to how many items were identified at this show-up; Perlman contends that no items were identified as stolen while the defendants contend that a "substantial" number of items were claimed.

Later that summer, Perlman and the store manager were found not guilty of the charges against them after a bench trial. At the trial's conclusion, the trial court ordered the police to return the pieces of jewelry listed on 61 inventory sheets. After receiving this jewelry, Perlman complained to the police department that a number of the items that had been seized were "missing." The Internal Affairs Division of the police department found that the complaint was groundless. Perlman then filed this suit under 42 U.S.C. § 1983 on March 11, 1983 seeking damages against Officer Trusz for allegedly making deliberate misrepresentations in his warrant affidavit and against the City of Chicago and Sergeant Devoney for the allegedly illegal seizure of the used jewelry.

Prior to trial, Perlman discovered that the police were still holding some jewelry that had not been identified as stolen. The district court ordered the police to return these items to Perlman. After discovery was completed, each party filed a motion for summary judgment. The district court granted summary judgment in favor of Trusz but held that Perlman's claim against Sergeant Devoney and the City of Chicago should go to trial, ruling in part that the defendants may have properly seized some of the nonwarrant jewelry under the "plain view" exception to the warrant requirement. A jury then found in favor of the defendants, and Perlman now appeals.

II.

In granting summary judgment in favor of Officer Trusz, the district court held that Perlman failed to overcome the presumption that the warrant affidavit was valid because he did not make a substantial preliminary showing that Officer Trusz made false statements in the warrant affidavit in knowing or reckless disregard of the truth. Order, No. 83 C 1705 (Dec. 17, 1984) (citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978)). The district court therefore granted summary judgment in favor of Officer Trusz. On appeal, Perlman contends that applying the "substantial preliminary showing" requirement of *Franks* is inappropriate in a civil case.

The Supreme Court has expressed a policy of discouraging insubstantial suits against government officials. *See, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–38, 73 L.Ed.2d 396 (1982). Noting this policy, the First Circuit applied the "substantial preliminary showing" requirement in a § 1983 action which alleged that a warrant affidavit contained false statements. *See Krohn v. United States*, 742 F.2d 24, 31 (1st Cir.1984). We believe that this approach to the type of claim before us now sensibly and effectively promotes the policy expressed by the Supreme Court.

Further, we see no reason to apply a standard different than that established by *Franks* to a civil action for damages based on an allegation that a police officer deliberately misrepresented facts in a warrant affidavit. Both the exclusion of evidence in a criminal case and the award of damages against a police officer in a civil case for making deliberate misrepresentations in a warrant affidavit operate to discourage violations of the Fourth Amendment, and the Supreme Court has recently noted that the standards to be applied in a similar context are the same in both civil and criminal actions. *See Malley v. Briggs*, — U.S. —, —, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) (standard of reasonableness applied in suppression hearing also defines qualified immunity of police officer in civil action). *See also Olson v. Tyler*, 771 F.2d 277, 282 (7th Cir.1985) (same). We therefore adopt the First Circuit's posi-

tion. Accordingly, we hold that the court below properly applied the "substantial preliminary showing" requirement to Perlman's claim against Officer Trusz, and properly granted summary judgment against Perlman for failing to make a substantial preliminary showing that Trusz made false statements in the warrant affidavit in knowing or reckless disregard of the truth.

### III.

Perlman contends that the trial judge erred in denying his motion for summary judgment, arguing that the defendants were precluded from asserting that they properly seized the jewelry under the plain view doctrine because of two admissions the defendants made before trial. First, Perlman contends that Sergeant Devoney admitted in a deposition that he knew not all of the jewelry was stolen, but decided to confiscate it all as contraband because of the length of time it would take to go through the large amount of used jewelry they found. Second, Perlman cites a statement in the defendants' response to his motion that the defendants brought Bertucci and the burglary victims with them when they executed the warrant solely to identify non-warrant items. Perlman asserts that, because of these two admissions, he was entitled to summary judgment as a matter of law.

Under the plain view doctrine, police may seize an item without a warrant if three conditions are met. First, the presence of the police in the area where they observe the item must be lawful. Second, the discovery of the item must be inadvertant. Finally, the criminal nature of the item must be immediately apparent. *Moya v. United States,* 761 F.2d 322, 326 (7th Cir. 1984) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)). Perlman argues that, at the time the trial judge ruled on his motion for summary judgment, the admissions set forth above conclusively established that the defendants' seizure of the jewelry did not meet any of these three conditions.

Perlman first argues that the defendants admitted that they violated the warrant requirement of the Fourth Amendment by stating in their response to Perlman's motion for summary judgment that they brought along Bertucci and the burglary victims solely to identify non-warrant items. Perlman's argument is supported by *Coolidge v. New Hampshire,* which stated that the Supreme Court "has never permitted the legitimation of a planned warrantless seizure on plain view grounds … and to do so … would be flatly inconsistent with the existing body of Fourth Amendment law." 403 U.S. at 471 n. 27, 91 S.Ct. at 2041 n. 27. The statement in the defendants' unverified memorandum of law, however, is not dispositive of this issue. In a proceeding for summary judgment, the statements in the supporting brief in opposition to the motion do not alone determine the trial court's ruling. *See* 10A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2721 & § 2723 pp. 63–66 (1983) (citations omitted). The trial court must consider all of the materials submitted by the parties, including affidavits or depositions, in evaluating whether an issue of fact exists. *See Marsh v. Austin-Fort Worth Coca-Cola Bottling Co.,* 744 F.2d 1077, 1079 n. 4 (5th Cir.1984) (per curiam); *Gray v. Greyhound Lines, East,* 545 F.2d 169, 174 (D.C.Cir.1976). In this case, Sergeant Devoney stated in his deposition that both Bertucci and the burglary victims accompanied the police to aid in identifying items listed in the warrant. In view of this sworn statement, we cannot agree with Perlman's contention that the trial court was required to rule against the defendants as a matter of law because of the unsworn statement in the defendants' memorandum of law.

Perlman further argues that this statement proves that the police did not discover the used jewelry inadvertently. The inadvertance requirement is not met when "the police know in advance the location of the evidence and intend to seize it." *Coolidge*

*v. New Hampshire,* 403 U.S. at 470, 91 S.Ct. at 2040. *See United States v. Griffith,* 537 F.2d 900, 903 (7th Cir.1976) (following *Coolidge* ). A mere suspicion by the police that they will discover criminal evidence not listed in the warrant, however, does not preclude a finding that the discovery of that evidence was inadvertant. *United States v. Liberti,* 616 F.2d 34, 37 (2d Cir.1980) (citing *United States v. Hare,* 589 F.2d 1291, 1294 (6th Cir.1979)); *United States v. Worthington,* 544 F.2d 1275, 1280 n. 4 (5th Cir.), *cert. denied,* 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72 (1977). Notwithstanding the fact that the trial judge was not required to view the admission in the defendants' memorandum as dispositive, we do not find that this admission showed more than a suspicion by the police that stolen jewelry not listed in the warrant was located at Imperial Jewelers. The police knew only that Bertucci had sold other stolen jewelry to Imperial Jewelers in the past, not that any stolen jewelry not listed in warrant was still at the store or what these particular items were. We therefore find that this statement did not preclude a finding that the used jewelry not listed in the warrant was inadvertantly discovered.

Finally, Perlman contends that Sergeant Devoney stated that he knew not all of the used jewelry was stolen, but decided to confiscate it all as contraband because of the length of time it would take to go through it all, and he argues that this proves the defendants could not show that the criminal nature of the used jewelry was immediately apparent. Accordingly, Perlman contends that the police did not have probable cause to seize the jewelry. In support of this argument, Perlman cites *United States v. Thomas,* 676 F.2d 239, 243 (7th Cir.1980), *cert. denied,* 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 & 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 364 (1981), which held that the "immediately apparent" requirement is intended to prevent police "from using the pretext of 'plain view' to conduct general inventory searches for items that may have a suspect character in a context."

We first note that Sergeant Devoney's statement is somewhat different in its actual form than as paraphrased above by Perlman. In a deposition, Sergeant Devoney was asked why the police took the jewelry not listed in the warrant, and his entire response was as follows:

Well, one of the main factors to this is that one of the, I believe it was the employee or I don't believe it was his wife, but one of the employees attempted, a woman that was there, attempted to take something from one of the trays and palm it and hide it in her hand and, while the other detectives were going through the cases, this woman had the stuff in her hand. We opened it up, there was property belonging to the victim.

So we suspected, we went through the cases and we found other items in there, like class—there were numerous class rings which we know in our burglary cases that a lot of them are being taken in the burglary because the common thief knows that they are being advertised that they are being bought for $125 a piece, because of the gold content. There was so many of them and other items, we decided that rather than sit there and spend numerous days in checking all of these items out, we would confiscate them as contraband.

Devoney Dep., pp. 10–11. In light of this entire statement, we must reject Perlman's argument because it is similar to the position rejected by the Supreme Court in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1982).

In *Texas v. Brown,* the police seized an uninflated party balloon that was knotted at the open end. The police had observed the balloon on the front seat of the defendant's car and seized it because they knew that such balloons were commonly used to hold drugs. The police had also observed several plastic vials, an amount of loose white powder, and an open bag of party balloons in the glove compartment of the defendant's car before seizing the balloon. The lower court found that the criminal nature of the balloon was not immediately

apparent because the police did not know for a certainty that the balloon contained illegal drugs. The Supreme Court disagreed, and upheld the seizure of the balloon under the plain view doctrine because the police had probable cause to believe that the balloon contained illicit drugs. 460 U.S. at 741–42, 103 S.Ct. at 1543.

The Court stated that in *Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980), it "did not view the 'immediately apparent' language of *Coolidge* as establishing any requirement that a police officer 'know' that certain items are contraband or evidence of a crime." 460 U.S. at 741, 103 S.Ct. at 1543. Rather, the court held that the seizure of an item in plain view is reasonable if "there is probable cause to associate the property with criminal activity." *Id.* at 741–42, 103 S.Ct. at 1543 (quoting *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)). The court then stated that probable cause

> merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States*, 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.

*Id.* at 742, 103 S.Ct. at 1543.

In view of these principles, we do not believe that Sergeant Devoney's statement precluded the defendants from relying on the plain view doctrine. First, it is incorrect to say that Devoney admitted he knew that all of the jewelry was not stolen. The import of Devoney's entire statement is that he could not tell with certainty which

items were stolen and which were not, but that he had a suspicion that any or all of the items could be stolen goods. Based on this suspicion, he seized all of the items as contraband. As stated above, Devoney was not required to know for a certainty that all of the items were contraband in order to seize them; he needed only probable cause to associate the items with criminal activity. We therefore examine the facts known to Sergeant Devoney at the time of the seizure, and before the district court on Perlman's motion, to determine whether Sergeant Devoney had a reasonable belief that the jewelry was stolen.

The officers knew that Bertucci had sold stolen jewelry to Imperial Jewelers on a number of prior occasions. Upon entering the store and viewing display cases, Bertucci and one of the burglary victims identified stolen jewelry listed in the warrant. These citizens then identified more stolen jewelry, some listed in the warrant and some not, in the trays of used jewelry Perlman had his employee bring up from the back of the store. The jewelry identified as stolen was intermingled with jewelry of the type that the police knew was commonly stolen in burglaries. Finally, one of the employees was caught attempting to conceal a ring that was contained in one of the trays, and one of the burglary victims identified this ring as her property.[1]

We find that these facts were sufficient to cause a man of reasonable caution to believe that all of the used jewelry may have been stolen property. We therefore find that there was probable cause to associate this jewelry with criminal activity. Under *Texas v. Brown*, this satisfies the "immediately apparent" requirement.[2] We therefore do not find that Sergeant Devo-

---

1. Perlman repeatedly stressed that the police seized nearly 900 items, but we fail to see the impact that the amount of items seized has on the determination of probable cause in this case. Perlman does not argue that the sheer number of items seized has any significance as to whether the items had been stolen, and we find that the magnitude of the seizure is irrelevant to this issue. During the first six months of 1986, 27,164 burglaries were reported in Chicago, Chicago Tribune, July 27, 1986, § 3, at 3,

col. 2., and Buckman alone confessed to some 100 burglaries, so it is not in the least incredible that a single jeweler might possess 900 or more stolen items.

2. Because we find that this ruling was a proper application of the plain view doctrine, we need not consider the defendants' argument that Perlman consented to the seizure.

ney's statement precluded the defendants from relying on the plain view doctrine. For the reasons stated above, we affirm the trial court's denial of Perlman's motion for summary judgment.[3]

## IV.

 Perlman also argues that he was entitled to a directed verdict, contending that the evidence at trial showed the officers seized the jewelry to determine whether it was stolen. This argument implies that the officers had to know for a certainty that each item of jewelry was stolen before they could seize it, but *Texas v. Brown* does not require knowledge that an item is contraband in order to meet the "immediately apparent" requirement of the plain view doctrine. It is enough that the officers had probable cause to associate the jewelry with criminal activity, and we find that this standard was met. Therefore, we reject Perlman's argument that he was entitled to a directed verdict.[4]

## V.

Finally, Perlman contends that he was entitled to an award of attorney's fees, claiming that the police returned all of the jewelry they seized only after he filed suit, and that therefore the suit was a partial success. The trial judge found, however, that the jewelry returned after this case was filed "could not be attributed with certainty to the filing of the lawsuit," Order, No. 83 C 1705, p. 3 (May 28, 1985) [Available on WESTLAW, DCTU database], and therefore denied Perlman's motion for attorney's fees. We review this

finding under the "clearly erroneous" standard. *See Illinois Welfare Rights Organization v. Miller,* 723 F.2d 564, 569 (7th Cir.1983).

The police returned jewelry listed on 61 inventory sheets to Perlman at the conclusion of his criminal trial. Perlman later complained to the Chicago Police Department that "$40,000.00 worth of jewelry is missing." The Internal Affairs Division of the police department investigated the complaint and found that it was groundless, apparently construing Perlman's complaint as an allegation that the police could not account for some of the jewelry. This conclusion is buttressed by Perlman's first amended complaint, which alleges that "these items were not inventoried following their seizure, but were taken for personal use by police officers." During discovery, Perlman moved the district court to order the return of the remaining jewelry, which had been properly inventoried and was not missing. The police department complied with these orders. The district court found that "[a]lthough the City may have been bureaucratic and recalcitrant in the return of the jewelry, it never asserted a claim that it was entitled to keep it. The return of the jewelry, therefore, could not be attributed with certainty to the filing of the law suit." Order, No. 83 C 1705, p. 3 (May 28, 1985) [Available on WESTLAW, DCTU database]. Because Perlman never requested the return of the jewelry before filing suit, we hold that the trial judge's finding was not clearly erroneous.

For the reasons stated above, the trial court's rulings and the jury's verdict are

AFFIRMED.

---

3. We do not believe that this holding is inconsistent with *United States v. Thomas,* 676 F.2d 239 (7th Cir.1980), *cert. denied,* 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 & 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 364 (1981), on which Perlman relies. In *Thomas,* this court upheld the seizure of automobile parts from a warehouse under the plain view doctrine, holding that their criminal nature was immediately apparent based on the police officers' knowledge that stolen cars had been driven into the warehouse, cars had been cut apart in the warehouse, and the warehouse contained no equipment for the repair or assembly of cars. The warrant authorized the seizure only of specific

stolen autos. This case is similar to *Thomas* in that auto parts, like jewelry, are not inherently criminal in nature like illegal drugs, but their criminal nature may be "immediately apparent" because of surrounding circumstances.

4. Perlman also argues that he is entitled to a new trial based on several allegedly incorrect evidentiary rulings and an allegedly inflammatory closing argument by the City of Chicago. We find that these arguments do not merit discussion and reject them without further comment.