Harry C. KAUFMANN; Eileen M. Kaufmann; Harry Kaufmann Motor Cars, Inc.; and Kaufmann–Campbell Leasing, Inc., Plaintiffs,

v.

Neil SAARI, personally, Defendant.

No. 93–C–482.

United States District Court, E.D. Wisconsin.

June 6, 1995.

Peterson, Johnson & Murray by Michael P. Crooks, Madison, WI, Milwaukee, WI, for plaintiffs.

Charles Guadagnino, Asst. U.S. Atty., Milwaukee, WI, for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The plaintiffs commenced this action on May 13, 1993, with the filing of a complaint asserting claims against the United States and twelve individual defendants. The defendants filed motions to dismiss the plaintiffs' complaint. In a decision and order dated December 22, 1993, I dismissed numerous counts of the plaintiffs' complaint. *Kaufmann v. United States,* 840 F.Supp. 641, 659–660 (E.D.Wis.1993).

In an attempt to correct the deficiencies of their original complaint the plaintiffs filed an amended complaint asserting 31 counts against the United States and two individual defendants. The remaining defendants filed a motion to dismiss the plaintiffs' amended complaint. In a decision and order dated January 3, 1995, I dismissed all of the claims of the plaintiffs' amended complaint with the exception of four Fourth Amendment claims, actionable under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Kaufmann v. United States,* 876 F.Supp. 1044, 1054 (E.D.Wis. 1995). The plaintiffs' Fourth Amendment

claims are asserted against ·defendant Neil Saari personally, on behalf of each of the plaintiffs.

Presently before the court are two motions filed by Mr. Saari. He has filed a motion to amend his answer to include an affirmative defense based upon a release signed by three of the plaintiffs in 1991. The defendant has also filed a motion for summary judgment based upon his assertion that he is qualifiedly immune from the remaining claims of the plaintiffs' amended complaint.

## I.  BACKGROUND

On September 11, 1990, Mr. Kaufmann was indicted by a federal grand jury on four counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B), and one count of attempted money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B). The indictment also called for the forfeiture of all property traceable to the offense, pursuant to 18 U.S.C. § 982(a). Magistrate Judge Aaron . Goodstein issued search and seizure warrants for the Harry Kaufmann Motor Cars, Inc. ["KMC"] premises on September 12, 1990. On September 13, 1990, federal agents executed the search warrants and seized all assets of KMC, including 99 automobiles.

A jury found Mr. Kaufmann guilty on count five of the indictment. Mr. Kaufmann pursued an unsuccessful appeal of his conviction. *See United States v. Kaufmann*, 985 F.2d 884 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2350, 124 L.Ed.2d 259 (1993).

This action was filed on behalf of Mr. Kaufmann, his wife Eileen M. Kaufmann, KMC and Kaufmann–Campbell Leasing ["Kaufmann–Campbell"]. Mrs. Kaufmann claimed a fifty percent interest in all of Mr. Kaufmann's assets. The four remaining claims of the plaintiffs' amended complaint assert that Mr. Saari violated the plaintiffs' Fourth Amendment rights, actionable under *Bivens*. Specifically, in counts I, VIII, XV, and XXII of their amended complaint, the plaintiffs allege that the search and seizure warrants issued by Magistrate Judge Goodstein were issued based in part upon "an invalid indictment, and in part upon misrepresentations knowingly or recklessly contained within Saari's affidavit in support of the issuance of the warrant." *Amended Complaint* at ¶¶ 28, 58, 90 and 121. The plaintiffs allege that paragraphs 13, 23, and 38 of Mr. Saari's affidavit, "among others, contain untrue information which could have been discovered with reasonable diligence."

## II.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In his brief in support of his motion for summary judgment, the defendant contends that the plaintiffs' Fourth Amendment claims fail to provide factual support for their conclusion that Mr. Saari's affidavit contained misrepresented or untrue information. The defendant also maintains that the plaintiffs' Fourth Amendment claims fail specifically to allege or to provide factual support to show that Mr. Saari, while performing discretionary functions, violated ·clearly established law regarding the Fourth Amendment. As such, Mr. Saari asserts that he is entitled to qualified immunity regarding the plaintiffs' remaining claims.

### A.  SUMMARY JUDGMENT STANDARD

■   Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Rule 56(c), Federal Rules of Civil Procedure. Material facts are those that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

■    The movant bears the initial burden of establishing that there is no dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The adverse party must then set forth specific facts to show that there is a genuine issue for trial. *Id.;* Rule 56(e), Fed-

eral Rules of Civil Procedure. The adverse party cannot rely on conclusory allegations to defeat the motion. *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 931 (7th Cir.1995). In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the non-moving party. *Id.* At the summary judgment stage, the court cannot weigh the evidence to determine the truth of the matter. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## B. FACTS

There is no genuine material issue as to any finding of fact proposed by the defendant to which no response has been set forth. *See* Local Rule 6.05(d). The following are the undisputed facts pertinent to the defendant's motion for summary judgment. At all times relevant to this action, Neil Saari was employed as a special agent for the Criminal Investigation Division of the Internal Revenue Service, United States Department of the Treasury. *Defendant's Proposed Findings of Fact ["DPFF"]* at ¶ 1; *Saari aff.* at ¶ 1. At all times relevant to this action, Mr. Saari was assigned to the Multi–Agency Organized Drug Enforcement Task Force. *DPFF* at ¶ 2; *Saari aff.* at ¶ 2. In his capacity as a special agent, Mr. Saari is responsible for the investigation of criminal conduct in the eastern district of Wisconsin and elsewhere, with special emphasis upon investigation of violations of federal, state, and local narcotics, tax, and money laundering laws. *DPFF* at ¶ 3; *Saari aff.* at ¶ 3.

As a special agent, Mr. Saari participated in a criminal investigation of Mr. Kaufmann. *DPFF* at ¶ 4; *Saari aff.* at ¶¶ 6, 10–21. On September 11, 1990, as a result of that investigation, a grand jury sitting in the eastern district of Wisconsin returned an indictment against Mr. Kaufmann; it charged him with four counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B), and one count of attempted money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B). *DPFF* at ¶ 5. On September 12, 1990, Mr. Saari prepared an affidavit in support of an application for a warrant for a search of the premises of KMC, located at 5858 North Green Bay Avenue, Glendale, Wisconsin, and for the seizure of certain real and personal property at that site. *DPFF* at ¶ 6; *Saari aff.* at ¶ 6.

Paragraphs 13, 23, and 38 of Mr. Saari's search warrant affidavit recount information provided to Mr. Saari, and others assigned to the investigation of Mr. Kaufmann, by certain cooperating witnesses regarding their automobile transactions with Mr. Kaufmann. *DPFF* at ¶ 9; *Saari aff.* at ¶ 8; *Search warrant aff.* at ¶¶ 10 and 38. Among those cooperating witnesses were Jerome Mann, Billy Cannon, James Verser, Jr., and a confidential informant. *Id.*

Jerome Mann provided information under a court-ordered grant of immunity. *DPFF* at ¶ 10; *Saari aff.* at ¶ 9; *Search warrant aff.* at ¶ 10. Billy Cannon and James Verser, Jr. provided information pursuant to agreements with the federal government whereby they received consideration in the disposition of criminal charges filed against them involving the illegal trafficking of controlled substances. *Id.* Jerome Mann, Billy Cannon, and James Verser, Jr. had previously provided Mr. Saari and other law enforcement officers, in the context of other criminal investigations, with information that proved reliable, based upon independent supporting and corroborating evidence gathered in those investigations. *DPFF* at ¶ 11; *Saari aff.* at ¶ 10; *Search warrant aff.* at ¶ 10.

Paragraph 13 of the search warrant affidavit reads as follows:

> Once [Jerome Mann] decided to purchase the Mercedes Benz from Harry Kaufmann, he asked Kaufmann about $10,000.00 cash reports since he planned to pay in cash. Kaufmann advised Mann that he should make partial payments under $10,000.00 each until the vehicle was paid for. Kaufmann told Mann that he was going to keep all of the money until all of the payments were made, then he (Kaufmann) was going to deposit all of the money at one time. Mann brought in multiple payments of approximately $8,000.00 each over a period of approximately one month until the car was paid for. On one occasion Mann had $16,000.00 with him and wanted to give Kaufmann the total amount. Kaufmann did not want to accept $16,000.00 and took only $8,000.00 and instructed Mann to come

back with the rest in a few days. Although Mann did all the negotiating and paying and was clearly the buyer he wanted the vehicle titled in a name other than his. When he discussed this with Kaufmann, Mann was told that since the trade in (a BMW) was in the name of Gloria Gordon, Kaufmann wanted to title the Mercedes in the name of Gordon so the paperwork would match. Mann originally wanted Harry Kaufmann to title the vehicle in another third party's name but Kaufmann did not want to title the vehicle in any other name that did not match the name that was on the BMW that was traded in. Mann told Kaufmann that titling the car in Gordon's name would be satisfactory.

*DPFF* at ¶ 12; *Search warrant aff.* at ¶ 13.

Paragraph 23 of the affidavit reads as follows:

[Billy] Cannon states that he negotiated for the purchase of the [1983] Zimmer [automobile] with Kaufmann who agreed to title the vehicle in the name of Cannon's mother once their transaction was complete. Cannon agreed to pay Kaufmann three payments of $9,000.00 each followed by one $6,000.00 payment.

*DPFF* at ¶ 13; *Search warrant aff.* at ¶ 23.

Paragraph 38 of the search warrant affidavit reads as follows:

On March 27, 1990 a cooperating individual (hereinafter CI) recorded an undercover meeting in cooperation with the IRS, with Harry Kaufmann at Harry Kaufmann Motor Car Company. CI had had previous conversations with Harry Kaufmann concerning selling an automobile to a "friend" of CI who was represented to Kaufmann to be a drug dealer. During the meeting that occurred on March 27, 1990, CI produced a purported letter that he had received from his friend concerning a purchase of an automobile from Harry Kaufmann. The letter listed several conditions that this "friend" wanted before he would purchase the automobile from Harry Kaufmann. At one point in the discussion, Harry Kaufmann again wanted to have his memory refreshed as to whether CI's friend was getting a divorce or was in an illegitimate

business. CI told Kaufmann that his "friend" was a marijuana dealer. After CI had stated this, Kaufmann stated that he had supported himself when he was a kid by dealing "coke" and "crystal" (a street term for methamphetamine). Kaufmann indicated he did not have any problems with CI's "friend" being a drug dealer. Then a discussion occurred about whose name the car was going to be in. Kaufmann said he was willing to title it in some third person's name if it was a real person who would actually sign the documents. Kaufmann said he would either Federal Express the documents to the third person to sign or that the third person should come to the dealership with CI's friend to sign the papers. Kaufmann then asked CI how his friend planned on paying for the car. CI indicated that he would be paying for the car with currency. Kaufmann indicated that that would not work because he would have to fill out a currency transaction report and then Kaufmann suggested that the friend pay part of it in cashier's checks so Kaufmann would not have to fill out the form.

*DPFF* at ¶ 14; *Search warrant aff.* at ¶ 38.

On September 12, 1990, Mr. Saari appeared before Magistrate Judge Aaron E. Goodstein for the purpose of executing under oath the affidavit submitted in support of the application for the search and seizure warrant for the premises of KMC. *DPFF* at ¶ 15; *Saari aff.* at ¶ 6. Magistrate Judge Goodstein found that probable cause existed to believe that evidence of criminal conduct involving violations of federal law would be found upon a search of the premises of KMC. *DPFF* at ¶ 16; *Saari aff.* at ¶ 20. The magistrate judge authorized the search of the premises of KMC and the seizure of real and personal property from that site. *Id.* On September 13, 1990, the search warrant was executed at the premises of KMC. *DPFF* at ¶ 17; *Saari aff.* at ¶ 21. During the search, approximately 90 vehicles, and other assets, were seized. *DPFF* at ¶ 18; *Saari aff.* at ¶ 21. Civil forfeiture proceedings were commenced regarding property seized from the premises of KMC. *DPFF* at ¶ 19.

During the trial in *United States v. Harry C. Kaufmann*, No. 90–CR–172 (E.D.Wis.), Mr. Kaufmann was represented by counsel and had an opportunity to cross-examine government agents other than Mr. Saari about the investigation and evidence which formed the basis for the charges contained in the indictment returned against him. *DPFF* at ¶ 21; *Plaintiffs' Proposed Findings of Fact ["PPFF"]* at p. 1. The jury in that case found Mr. Kaufmann not guilty as to counts one and two of the indictment. *DPFF* at ¶ 22; *Memorandum in Support of Neil Saari's Motion for Summary Judgment,* exhibit 2. The jury found Mr. Kaufmann guilty on count five of the indictment, charging him with attempted money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B), and was unable to reach a verdict on counts three and four of the indictment. *Id.* The government subsequently dismissed counts three and four of the indictment. *PPFF* at ¶ 23; *Memorandum in Support of Neil Saari's Motion for Summary Judgment,* exhibit 2. The United States court of appeals for the seventh circuit affirmed Mr. Kaufmann's conviction on count five of the indictment, and the United States Supreme Court subsequently denied Mr. Kaufmann's petition for a writ of certiorari. *Memorandum in Support of Neil Saari's Motion for Summary Judgment,* exhibits 2 and 3.

## C. ANALYSIS

The defendant maintains that he is entitled to summary judgment on the basis of qualified immunity. Mr. Saari also contends that the four remaining counts of the plaintiffs' amended complaint contain no factual support for their conclusion that Mr. Saari's search warrant affidavit contained misrepresented or untrue information. The defendant further asserts that the plaintiffs' Fourth Amendment claims fail to set forth any factual support for their assertion that Mr. Saari should have discovered the allegedly misrepresented or untrue information. Additionally, Mr. Saari argues that the amended complaint fails specifically to allege, or to set forth any factual allegations, to show that he violated clearly established law regarding the Fourth Amendment while performing discretionary functions. Because

*Bivens* claims are identical to claims under 42 U.S.C. § 1983, except for the replacement of a state actor acting under the color of state law with a federal actor acting under the color of federal law, *see Bieneman v. City of Chicago,* 864 F.2d 463, 469 (7th Cir.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2099, 2100, 104 L.Ed.2d 661 (1989), I will consider cases involving both *Bivens* claims and § 1983 claims.

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A law enforcement officer's judgment in applying for a search warrant is a discretionary function. *See Malley v. Briggs,* 475 U.S. 335, 344–345, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986). A clearly established right is one established in a particularized sense rather than a more generalized right. *Hinnen v. Kelly,* 992 F.2d 140, 142 (7th Cir.1993). The application of qualified immunity must be considered in light of the factual circumstances faced by the government official. *Id.*

Qualified immunity functions as an immunity from suit, rather than a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). Qualified immunity protects all government officials, except for those who are "plainly incompetent, or those who knowingly violate the law." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096. The issue of qualified immunity is a question for the court, not the jury, to decide. *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988).

In analyzing a defense of qualified immunity raised in a motion for summary judgment, the court must address two questions: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established

at the time in question?" *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir.1994). The constitutional standards at issue in the present action involving claims of Fourth Amendment violations originate in the Supreme Court's decision in *Franks v. Delaware,* 438 U.S. 154, 155–156, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). *See Perlman v. City of Chicago,* 801 F.2d 262, 264 (7th Cir.1986), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987). In *Franks,* the Supreme Court held that a search warrant issued based upon an affidavit containing a falsehood violates the Fourth Amendment where: (1) such affidavit includes a false statement; (2) the false statement was either deliberately made with knowledge of its falsity or was made with reckless disregard of the truth; and (3) the affidavit would have failed to establish probable cause if the false statement was not included in the affidavit. 438 U.S. at 155–156, 98 S.Ct. at 2676–77.

■ In order to survive a motion for summary judgment based upon qualified immunity, a plaintiff asserting a claim that an affiant made false statements in a warrant affidavit in knowing or reckless disregard of the truth must make a substantial preliminary showing to support his claim. *Perlman,* 801 F.2d at 264–265 (citing *Krohn v. United States,* 742 F.2d 24, 31 (1st Cir.1984)). "In order to defeat a motion for summary judgment, or to impose upon the defendant the burdens of pretrial discovery, a plaintiff must show more than 'a mere desire to cross-examine' but must furnish '[a]ffidavits or sworn or otherwise reliable statements of witnesses.'" *Krohn,* 742 F.2d at 31.

■ Addressing the issue of qualified immunity requires an assessment of the objective reasonableness of a defendant's actions. *See Malley,* 475 U.S. at 345, 106 S.Ct. at 1098. In the context of search warrants, a government official would lose the protection of qualified immunity "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* at 344–345, 106 S.Ct. at 1098.

In his affidavit in support of his motion for summary judgment, the defendant expressly denies that paragraphs 13, 23, and 38 of his search warrant affidavit contained any knowing or reckless misrepresentations. *Saari aff.* at ¶ 13. He also avers that nothing about the information provided to him by cooperating witnesses, as recounted in his search warrant affidavit, led him to believe that the information provided by those witnesses was "fabricated, erroneous, calculated to mislead, or the product of misperception." *Saari aff.* at ¶ 12. The defendant states that his belief as to the veracity of the information recounted in his search warrant affidavit is based upon his experience and that of other law enforcement officers with the cooperating witnesses, and also upon assessments of the credibility of those witnesses. *Saari aff.* at ¶ 12. In his memorandum in support of his motion, the defendant asserts that the plaintiffs' amended complaint "fails to state, in a particularized manner, that Neil Saari violated any clearly established constitutional right in the furtherance of performing discretionary functions."

■ The defendant's actions in gathering the information contained in his search warrant affidavit, and applying for the search warrant, are discretionary functions. *See Malley,* 475 U.S. at 344–345, 106 S.Ct. at 1098. Mr. Saari's averments that he was certain of the veracity of his search warrant affidavit, and the information obtained from cooperating witnesses, at the time that the affidavit was submitted to Magistrate Judge Goodstein are sufficient to sustain his burden of demonstrating that he is entitled to summary judgment on the basis of qualified immunity. Thus, it is incumbent upon the plaintiffs to show that there is a genuine issue of fact that would preclude this court from granting Mr. Saari's motion for summary judgment on the basis of qualified immunity.

The factual allegations asserted by the plaintiffs in response to the defendant's summary judgment motion are as follows. With respect to paragraph 13 of the search warrant affidavit, Mr. Kaufmann did not advise Jerome Mann on how to structure his payments for the purchase of the Mercedes Benz, as Mr. Kaufmann did not know of the

requirements that business transactions over $10,000 must be reported to the government on a currency transaction report (form 8300) until after Mann had purchased the vehicle. *Kaufmann aff.* at ¶¶ 2–3. Jerome Mann stated that many of the allegations attributed to Mr. Mann and contained in Mr. Saari's search warrant affidavit are untrue. *Prust aff.* at ¶ 4. With respect to paragraph 23 of the search warrant affidavit, Mr. Kaufmann did not negotiate with Billy Cannon for the purchase of an automobile. *Kaufmann aff.* at ¶ 4. The government subpoenaed business records from KMC which contained a sales agreement evidencing a business transaction between KMC and Mr. Cannon negotiated by Dave Campbell, Mr. Kaufmann's business partner. *Id.* at ¶ 6. With respect to paragraph 38 of the search warrant affidavit, the "friend" of the confidential informant was represented to Mr. Kaufmann as a real estate purchaser; the friend was not represented to Mr. Kaufmann as a drug dealer. *Id.* at ¶¶ 7–8. All of these allegations are disputed by the defendant.

However, accepting the plaintiffs' allegations as true, none of the information recited above shows that Mr. Saari knew or should have known that portions of his search warrant affidavit were untrue at the time that he submitted it. Mr. Kaufmann's subjective knowledge of the cash reporting requirements is irrelevant to Mr. Saari's knowledge as to the veracity of the statements contained in his search warrant affidavit.

Aside from the fact that it is hearsay, Ms. Prust's assertion that Jerome Mann told her that information contained in the affidavit was untrue does not show that Mr. Saari made knowing or reckless misrepresentations. Mr. Prust's affidavit does not identify any specific portions of paragraph thirteen that Mr. Mann stated were "untrue," and it does not state that information which Jerome Mann provided directly to Mr. Saari was inaccurately recounted in Mr. Saari's search warrant affidavit. Furthermore, the fact that the government had in its possession a sales agreement showing that Mr. Campbell had negotiated a transaction with Mr. Cannon does not show that Mr. Kaufmann had no involvement in that transaction, nor does

it show that Mr. Saari made a knowing or reckless misrepresentation.

The plaintiffs' assertion that the "friend" was represented to Mr. Kaufmann as a real estate purchaser does not tend to show that Mr. Saari made knowing or reckless misrepresentations. The information contained in paragraph 38 of Mr. Saari's search warrant affidavit was electronically recorded. *Search warrant aff.* at ¶ 38. The plaintiffs do not allege that the information recited by Mr. Saari in paragraph 38 of his search warrant affidavit was inconsistent with the recorded information.

■ The plaintiffs have provided a mere scintilla of evidence to show that the information provided in Mr. Saari's search warrant was inaccurate. However, they have not provided *any* evidence to show that Mr. Saari would have or could have known of the allegedly untrue information. A search warrant is not unlawful merely because information submitted in support of the warrant is later determined to be inaccurate. *Harden v. Peck,* 686 F.Supp. 1254, 1259 (N.D.Ill. 1988). The plaintiffs have failed to submit any proof of culpable conduct on the part of Mr. Saari. Consequently, they have failed to show that Mr. Saari's actions in applying for the search warrant based upon the information contained in his affidavit were unreasonable. *See Malley,* 475 U.S. at 345, 106 S.Ct. at 1098. Because none of the disputed facts are germane to the issue of the defendant's entitlement to qualified immunity, there is no genuine issue of *material* fact. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

As support for their contention that Mr. Saari's affidavit contained knowing misrepresentations, the plaintiffs assert that

[p]rior to defendant Kaufmann's indictment, James Ansier of the IRS interviewed drug dealers who eventually testified at Kaufmann's trial. Some time after Ansier interviewed these gentlemen, they were interviewed by Agent Neil Saari. Some of them gave markedly different information the second time around. Something obviously happened in between these two interviews to effect these witnesses memories or their level of disclosure.

The plaintiffs provide no information as to what was "markedly different" the second time around. Furthermore, they do not explain how these asserted differences demonstrate that Mr. Saari's search warrant affidavit contained knowing misrepresentations.

Under the doctrine of qualified immunity, the court must assess "whether a reasonably well-trained officer ... would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley,* 475 U.S. at 345, 106 S.Ct. at 1098. The plaintiffs have not provided any reliable evidence to demonstrate that Mr. Saari made knowing or reckless misrepresentations in his search warrant affidavit. The plaintiffs have not made a substantial preliminary showing to support their Fourth Amendment claims. They have not shown that a reasonable officer in the position of Mr. Saari would conclude that his affidavit failed to establish probable cause and that he should not have applied for the warrant.

The plaintiffs state that they have been prevented from engaging in discovery due to stays on discovery imposed by the court prior to resolution of the issue of qualified immunity. They contend that summary judgment is inappropriate because they have not had an opportunity to engage in discovery. The plaintiffs claim that they intend to take the depositions of several individuals, and that "due to their involvement in the [criminal] investigation, it is probable that these individuals would have some knowledge in regard to whether the affidavit submitted by Saari contained false allegations." *Crooks aff.* at ¶ 6.

The plaintiffs ignore the instruction of the Supreme Court in *Mitchell v. Forsyth* that the doctrine of qualified immunity is intended to protect government officials from the burdens of litigation and the corresponding burden of discovery where a plaintiff has failed sufficiently to demonstrate a violation of clearly established law. 472 U.S. at 526, 105 S.Ct. at 2815–16. While I found the allegations of the plaintiffs' complaint sufficient to meet the minimal pleading standards imposed by Rule 8(a), Federal Rules of Civil Procedure, I reserved judgment on the question of qualified immunity. The limited information presented by the plaintiffs in response to the defendant's motion shows that their claims are the type of "insubstantial claims" which should be resolved under the doctrine of qualified immunity prior to the commencement of discovery. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

The plaintiffs are expected to have some factual support for their claims prior to commencing their action. Their aspiration that further discovery will uncover facts to substantiate their claims does not warrant denial of the defendant's motion for summary judgment. In response to the defendant's motion for summary judgment, it is incumbent upon the plaintiffs to demonstrate some basis to support the asserted violations and to establish that the defendant's actions violated more than a generalized right, such as the Fourth Amendment right to be free from unlawful searches and seizures. *See Anderson v. Creighton,* 483 U.S. 635, 640–641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1984). Absent such support, the defendant is entitled to summary judgment on the basis of qualified immunity.

### III.  DEFENDANT'S MOTION TO AMEND HIS ANSWER

Because I conclude that the defendant is qualifiedly immune from the remaining claims of the plaintiffs' complaint, I need not address the defendant's motion to amend his answer. I also need not address the effect of the release signed by plaintiffs Harry Kaufmann, Eileen Kaufmann and KMC, which the defendant has asserted as an additional basis for summary judgment.

### IV.  CONCLUSION

The plaintiffs have not made a substantial preliminary showing that Mr. Saari made reckless or knowing misrepresentations in his search warrant affidavit. The law at the time was clear that the negligent or mistaken inclusion of information in a search warrant affidavit does not rise to the level of a constitutional violation. *Jones v. United States,* 878 F.Supp. 1290, 1295 (D.Neb.1995). Consequently, the defendant is entitled to summary judgment in his favor on the basis of qualified immunity.

## ORDER

Therefore, IT IS ORDERED that the defendant's motion for summary judgment on the basis of qualified immunity be and hereby is granted.

IT IS ALSO ORDERED that the clerk of court, pursuant to Rule 58, Federal Rules of Civil Procedure, be and hereby is directed to enter judgment dismissing this action, with prejudice.